# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br>600 Pennsylvania Ave NW, Rm NJ3158<br>Washington, DC 20580,<br><br>    Plaintiff,<br><br>    v.<br><br>**RESIDENTIAL RELIEF FOUNDATION, INC.**<br>1502 Joh Avenue, Suite 140<br>Baltimore, MD 21227<br>Baltimore City,<br><br>**SILVER LINING SERVICES, LLC**<br>1502 Joh Avenue, Suite 140<br>Baltimore, MD 21227<br>Baltimore City,<br><br>**MITIGATION AMERICA, LLC**<br>1502 Joh Avenue, Suite 160<br>Baltimore, MD 21227<br>Baltimore City,<br><br>**JAMES W. HOLDERNESS** also doing business<br>as the Law Office of James Holderness<br>1502 Joh Avenue, Suite 140<br>Baltimore, MD 21227<br>Baltimore City,<br><br>**MICHAEL VALENTI**<br>1502 Joh Avenue, Suite 140<br>Baltimore, MD 21227<br>Baltimore City,<br><br>**BRYAN J. MELANSON**<br>1502 Joh Avenue, Suite 140<br>Baltimore, MD 21227<br>Baltimore City, | Case No.<br><br>**COMPLAINT FOR<br>PERMANENT INJUNCTION<br>AND OTHER EQUITABLE<br>RELIEF** |

**JILLIAN N. MELANSON**                    )
1502 Joh Avenue, Suite 140                 )
Baltimore, MD 21227                        )
Baltimore City, and                        )
                                           )
**DENNIS STRZEGOWSKI**                     )
1502 Joh Avenue, Suite 160                 )
Baltimore, MD 21227                        )
Baltimore City,                            )
                                           )
      Defendants.                      )
_____    )

Plaintiff, the Federal Trade Commission ("FTC"), for its complaint alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in

connection with the marketing and sale of mortgage assistance relief services and debt relief

services.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C.

§ 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by

statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also

enforces the Telemarketing Act, 15 U.S.C. § 6101 *et seq.*  Pursuant to the Telemarketing Act, the

FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and

abusive telemarketing acts or practices.

5.     The FTC is authorized to initiate federal district court proceedings, by its own

attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as

may be appropriate in each case, including rescission or reformation of contracts, restitution, the

refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b),

56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c), and 6105(b).

## DEFENDANTS

6.     Defendant Residential Relief Foundation, LLC ("RRF") is a Delaware limited

liability company with its principal place of business at 1502 Joh Avenue, Suite 140, Baltimore,

Maryland.  RRF transacts or has transacted business in this district and throughout the United

States.  At all times material to this Complaint, acting alone or in concert with others, RRF has

advertised, marketed, distributed, or sold mortgage assistance relief services to consumers

throughout the United States.

7.     Defendant Silver Lining Services, LLC, also doing business as Silver Lining

Services, is a Maryland limited liability company with its principal place of business at 1502 Joh

Avenue, Suite 140, Baltimore, Maryland.  Silver Lining Services transacts or has transacted

business in this district and throughout the United States.  At all times material to this

Complaint, acting alone or in concert with others, Silver Lining Services has advertised, marketed, distributed, or sold mortgage assistance relief services to consumers throughout the United States.

8.      Defendant Mitigation America, LLC, is a Delaware limited liability company with its principal place of business at 1502 Joh Avenue, Suite 160, Baltimore, Maryland. Mitigation America transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Mitigation America has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

9.      Defendant James W. Holderness is a principal of RRF and Silver Lining Services. He also does business as the Law Office of James Holderness.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Holderness resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.      Defendant Michael Valenti is a principal of RRF and Mitigation America.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Valenti resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11.      Defendant Bryan J. Melanson is a principal of RRF and Mitigation America.  At all times material to this Complaint, acting alone or in concert with others, he has formulated,

directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Bryan Melanson resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

12. Defendant Jillian N. Melanson is a principal of RRF. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Jillian Melanson resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

13. Defendant Dennis Strzegowski is a principal of Mitigation America. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Strzegowski resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

14. Defendants RRF, Silver Lining Services, and Mitigation America (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices and other violations of law alleged below. Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, office locations, and have commingled funds. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Holderness, Valenti, Bryan Melanson, Jillian Melanson, and Strzegowski have formulated,

directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

15.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## AVAILABILITY OF FREE LOAN MODIFICATION AND MORTGAGE ASSISTANCE RELIEF SERVICES

16.     Numerous mortgage lenders and servicers have instituted free programs to assist financially distressed homeowners by offering them the opportunity to modify loans that have become unaffordable.  Many of these "loan modification" programs have expanded dramatically as lenders have increased participation in the federal government's "Making Home Affordable" program,  a plan to stabilize our housing market and help up to 7 to 9 million Americans reduce their monthly mortgage payments to more affordable levels.  The Making Home Affordable program includes the Home Affordable Modification Program, in which the federal government has committed $75 billion to keep up to 3 to 4 million Americans in their homes by preventing avoidable foreclosures.  Moreover, numerous major mortgage lenders and servicers, non-profit and community-based organizations, the federal government, and the news media have helped publicize the availability of these free mortgage loan modification programs.  Lenders often notify consumers of the availability of these programs, or of consumers' eligibility, through their "loss mitigation" departments.  Defendants divert consumers from these free programs and induce them to spend thousands of dollars on their purported modification services.

## DEFENDANTS' BUSINESS PRACTICES

17.     Since at least September 16, 2009, Defendants have engaged in a course of

conduct to advertise, market, offer to sell, and sell to consumers mortgage assistance relief

services and debt relief services.

### Defendants' Mortgage Assistance Relief Services

18.     Defendants have marketed their mortgage assistance relief services through

telemarketing, direct mail solicitations, and the Internet to homeowners in danger of losing their

homes to foreclosure.  The letters and Internet websites invite consumers to call Defendants'

toll-free number for more information.

### Direct Mail Solicitation

19.     Defendants market their services by sending direct mail solicitations to

homeowners in financial distress, typically to homeowners who are facing foreclosure or are 30

to 60 days behind in their mortgage payments.  The solicitations are enclosed in a white, official-

looking, window-type envelope.  A typical and illustrative envelope (a copy of which is attached

hereto as Exhibit A) has the following return address:

> **RRF**
> **Department of Financial Records**
> CONFIDENTIAL MATERIAL
> P.O. Box 7434
> Baltimore, MD 21227.

The return address is superimposed on a seal picturing the likeness of the Great Seal of the

United States surrounded by a circle with the words "RESIDENTIAL RELIEF

FOUNDATION."  Above the consumer's address is the phrase, in bold print, **"Time Sensitive**

**Open Immediately."**  To the right of the consumer's address appears the following boxed-

statements:

**WARNING: $2,000 FINE AND/OR 5 YEARS IMPRISONMENT** for any person who tampers with or obstructs delivery of mail intended for addressee. U.S. Code Title 18, Section 1702." (emphasis in original) and

**INSTRUCTIONS TO POSTMASTER**
Do not forward unless the addressee has filed an authorizing change of address notice. If undeliverable, please handle in accordance with MAIL SECURITY regulations as outlined in section No. 115 of the United States Postal Service Domestic Mail Manual.

20.     Inside the envelope is a one-page letter. At the top of a typical and illustrative

letter (a copy of which is attached hereto as Exhibit B) is the phrase "**FORECLOSURE**

**STIMULUS UPDATE**" (emphasis in original). In some versions of the letter, directly under

this phrase is the phrase "FOR [STATE] HOMEOWNERS," with the [STATE] varying upon the

state of residence of the particular consumer. At the left of the letter is the consumer's address.

At the top right of a typical and illustrative letter is the following:

> **Date: April 30, 2010**
>
> **FINAL ENTITLEMENT NOTICE**
> **Expiration Date:**
>
> **May 30, 2010**
>
> **Modification Case #R043010-70977**
> Your modification case has been assigned to
> the following processing center:
>
> **Residential Relief Foundation, LLC**
> PO BOX 7434
> Baltimore, MD 21227
>
> **Modification Helpline: 1-877-254-7857**

In other versions of the letter, the phrase "**FINAL ENTITLEMENT NOTICE**" is replaced by

the phrase "**SECOND NOTICE.**" And the phrase "Your modification case has been assigned to

the following processing center" is replaced by the phrase "Your case has been assigned to the following processing center."

21.    The solicitation letters disseminated by Defendants assert that Defendants' program will allow consumers to obtain mortgage loan modifications that will reduce substantially consumers' financial obligations.  A typical and illustrative letter states that "[d]ue to the current foreclosure crisis, the Federal Government has urged all mortgage banks and lenders to allow qualified borrowers to modify their mortgages.  *Residential Relief Foundation* is currently assisting homeowners seeking relief on their delinquent mortgages through the *Loan Rewrite Initiative Program*."  The letter then states that "[o]ur records indicate that [the consumer is] seriously delinquent on [his or her] mortgage" and that RRF "is authorized to provide [the consumer] with a free consultation" to "determine if [the consumer] qualif[ies] for a beneficial loan modification through the *Loan Rewrite Initiative Program*."  The letter states that Defendants' program could result in "[l]ate payments waived," "[l]ate fees waived," "[l]egal fees waived," "[a]djustable rates converted to fixed rates as low as 1%," "[l]ower payment," and "[p]rincipal balances reduced."  Defendants' letter further states that their services "may reduce [the consumer's] mortgage payment by as much as 40%.  For example, a *$2,000 monthly payment* may be reduced to *as low as $1,200*." (emphasis in original)  Defendants' letter also states that their program "may eliminate all delinquent payments and fees."

22.    Defendants' letter reinforces the impression that Defendants will modify successfully consumers' mortgages by touting Defendants' expertise in obtaining mortgage loan modifications.  For example, the letter states that Defendants employ "a staff, which includes real estate attorneys, forensic auditors, and lender specific counselors who deal with the loss mitigation department of banks on a daily basis.  Based on this expertise *Residential Relief*

*Foundation* has obtained a very high success rate for homeowners that meet the *Loan Rewrite Initiative Program* criteria."

23.    Defendants' letter closes by urging consumers that "Time is of the essence" and directing consumers to call Defendants' toll-free number so that Defendants' "attorneys and modification counselors" can assist those consumers in saving their homes and "dramatically" reducing their monthly mortgage payments.  The letter is signed *"Residential Relief Foundation."*  At the bottom of some versions of the letter, there appears a seal picturing the likeness of the Great Seal of the United States surrounded by a circle with the words "RESIDENTIAL RELIEF FOUNDATION."

24.    Defendants' letter contains no language qualifying the success rate claims or the claims that Defendants' program is affiliated with the government.  Defendants' letter contains no mention of the fees or total costs to purchase, receive, or use Defendants' mortgage assistance relief services.

**Internet Website**

25.    Defendants also maintain several Internet websites, including residentialrelief.org and rrfusa.org, through which they market their services.  The websites are substantially similar in structure and content.  Some versions of Defendants' websites displayed at the top of the website a seal picturing the likeness of the Great Seal of the United States next to their name "RESIDENTIAL RELIEF FOUNDATION."  Other versions of the websites display Defendants' name under a logo consisting of two house roof peaks that is similar to the logo of the federal government's Making Home Affordable program (whose logo depicts a row of three house roof peaks, with a square in the middle of each).  The websites also contain links to the MakingHomeAffordable.gov website.

26.     Defendants' websites contain statements intended to induce consumers to purchase Defendants' mortgage assistance relief services, including the following:

a.      Save your home and reduce your monthly expenses

b.      With Residential Relief Foundation's foreclosure help, we take the difficulty out of it and make it as easy as possible.  If you are having difficulty paying your mortgage or know you will have difficulty in the near future, call us!

c.      Contact Residential Relief Foundation to act quickly in order to prevent the foreclosure process from continuing.

d.      Turn to Residential Relief Foundation for expert guidance.

e.      The goal of Obama's plan is to have 500,000 loan modifications under way by November 1.  The loan modification initiative was announced in February, and is projected to help up to 4 million homeowners.  The plan calls for servicers to reduce monthly payments to no more than 31% of a mortgage holder's pre-tax income.  Many borrowers have complained that servicers are not responding to their calls and applications, and that they are denied without explanation.

f.      **I already tried to do this on my own and my mortgage company denied my application for a plan.  How can you complete a loan modification when I could not?**
The majority of our clients have already contacted their lender and tried to work out a plan which was denied.  Here are a few reasons our success rate is so high.  First, your income/expense report and the rest of your financial package will be filled out and submitted correctly.  If it is not submitted correctly, most lenders will deny the request for a plan.  Second, supporting documentation is a key component in our LMRP.  The Residential Relief Foundation, LLC will provide you with a Forensic Audit to uncover RESPA Violations, a Cost Benefit why your case should be approved, a Real Estate Valuation Report of your particular property, and a graphical analysis of current market conditions in your area.

g.      Residential Relief Foundation, LLC is an attorney based mortgage modification company founded by James W. Holderness located in Baltimore, Maryland.  Years of experience in mortgage banking and foreclosure practice gives us a competitive edge over other companies in the industry.

27.     Defendants' websites also contain numerous purported customer testimonials touting Defendants' ability to arrange loan modifications and/or stop foreclosures.  The testimonials include the following statements:

a.      Thank you for your excellent work in helping me get a favorable decision regarding my loan modification.  I tried for almost 4 months to get this done on my own but failed. . .

b.      Your team was able to get done in almost five weeks that [sic] I had tried to accomplish over the past 13 months.

c.      We want to thank you for your help through this process. . .Within 2 weeks of us sending the packet, we got our approval. . .

d.      We tried to get our loan modified for 6 months on our own and then were denied. With the help of Residential Relief Foundation our loan modification was approved in 6 weeks!

e.      I would like to take this opportunity to thank you for your outstanding service that you provided during the difficult process of me trying to keep my home . . . I was able to get an interest rate of **2.86% from 6.50%**. . . (emphasis in original)

f.      We actually got our re-modify completed and it was approved. . . It's going to save us about $700/mth.  For 5 yrs. and by the 8th year it will save us about $350/mth!!!

28.     Defendants submitted a "press release" on a press release distribution website called free-press-release.com.  The "press release" is dated September 10, 2010 and states that "Residential Relief Foundation is an organization that came into existence to help realize the goal of the Obama government.  President Obama has vowed to get 500,000 loan modifications in process by 1[st] November."  The release states that loan modification can "reduce the monthly payments by a substantial amount," "interest rate and principal amount can be reduced," and "[a]djustable rates can be converted to a fixed one."  The release then states that "Residential Relief Foundation provides a forensic audit on the loan modification of the user," "a real estate

valuation report of your property, a cost benefit analysis to prove why your case should be approved" all of which "take you one step forward in getting your loan modification approved." The release states that "[n]umerous borrowers are grumbling that these lenders are not paying heed to their calls and applications. They are also complaining about their applications being denied without explanation." and follows that with "You should contact Residential Relief Foundation if you are in a financial crisis . . . You can save your house if you contact them." The release closes with Defendants' contact information and toll-free telephone number.

### Telemarketing Sales Pitch

29.     Consumers who call the toll-free number in response to Defendants' letters and websites speak with Defendants' telemarketers. In numerous instances, the telemarketers state that Defendants are an attorney based firm specializing in helping consumers obtain mortgage modifications and avoid foreclosure. In numerous instances, the telemarketers state that it is nearly impossible for consumers to obtain mortgage modifications on their own, but that because of Defendants' expertise and familiarity with guidelines and criteria, they are able to obtain modifications for consumers. In numerous instances, the telemarketers state that Defendants will prepare three reports: (1) a property evaluation; (2) a forensic audit that will reveal any federal violations by the lender in the consumers' mortgage, such as improper disclosures or excessive fees, and can be used as leverage with the lender in getting consumers' mortgages modified; and (3) a cost benefit analysis that will show lenders for which modification programs consumers qualify, how consumers will be able to afford the modification, and that the modification will still be profitable to lenders. In numerous instances, the telemarketers explain that Defendants' reports will give consumers' lenders all the information the lenders need to approve a mortgage modification. In numerous instances, the telemarketers explain that because

Defendants do the work up front for lenders in preparing the reports, Defendants get results quickly. In numerous instances, the telemarketers also state that Defendants will conduct a mediation conference call between consumers and their lenders. The telemarketers then gather detailed financial information about the consumer's mortgage and income.

30. In numerous instances, the telemarketers assure consumers that Defendants have a high success rate, for example completing 200 modifications per week or 3,000 modifications per month. In numerous instances, the telemarketers state that they help many consumers obtain modifications under the federal government's Home Affordable Modification Program. In numerous instances, the telemarketers provide consumers with examples of the types of modifications Defendants can obtain for consumers, for example lowering interest rates to 2%, lowering monthly payments, and putting arrearages to the back of the loan. In numerous instances, the telemarketers state that Defendants have a high success rate because they only accept consumers who pre-qualify for Defendants' program.

31. In numerous instances, after gathering consumers' information, the telemarketers inform consumers that they will run consumers' information through Defendants' underwriting system which is based on lenders' guidelines for mortgage modifications to determine whether the consumers pre-qualify for a modification. In numerous instances, after telling consumers that they will run consumers' information through Defendants' underwriting system, the telemarketers put consumers on hold. In numerous instances, after waiting a brief period of time, the telemarketers come back on the phone and tell consumers they have pre-qualified for a mortgage modification.

32. In numerous instances, the telemarketers then explain that Defendants' fees are $1,495 up front. In some instances when consumers are unable to pay $1,495, Defendants allow

consumers to pay the fee in installments. The telemarketers explain that Defendants accept either credit or debit card or check-by-phone. Payment typically is processed in the names of Silver Lining Services or the Law Office of James Holderness. After obtaining consumers' financial account information, the telemarketers state that Defendants will email a financial package to be completed and returned to Defendants.

33.     In some instances, the telemarketers advise consumers not to make further payments on their mortgage.

34.     In numerous instances, Defendants fail to obtain the promised mortgage modifications that will make consumers' mortgage payments more affordable.

35.     Defendants are not part of, or affiliated with, the United States government or any agency thereof.

### Defendants' Debt Relief Services

36.     Defendants have marketed their debt relief services through telemarketing and the Internet. The Internet websites invite consumers to call Defendants' toll-free number for more information.

37.     In numerous instances, as part of their telemarketing sales pitch for mortgage assistance relief services, Defendants' telemarketers ask consumers whether they have unsecured debt. The telemarketers explain that they will have their debt settlement department look over the consumer's file. In numerous instances, the telemarketers state that Defendants have an excellent program designed to settle consumers' debts between 20% to 35% of the balance.

38.     Defendants also maintain at least one Internet website, mitigationamerica.com, through which they market their services. Defendants' website contains statements intended to induce consumers to purchase Defendants' debt relief services, including the following:

a.     Our knowledgeable specialists will provide you with an affordable monthly payment plan.

b.     Settle debts for pennies on the dollar

c.     Become debt free in 12 to 36 months

d.     Remove late fees and penalties

e.     Q: How do you reduce my debts?
       A: We will negotiate and work with the creditors on your behalf. . .We are usually able to reduce the total amount owed to an average of 25 - 50 cents on the dollar, including all fees and payments.

f.     Q: What should I expect from your debt settlement program?
       A: You can expect a substantial reduction in the total balance that you owe to your creditors.  While each case is different and results will vary, Mitigation America's debt settlement program targets to settle client debts for 25% to 50% of the balances owing.

### Defendants' Security Practices

39.     As set forth above, Defendants collect and maintain sensitive consumer information concerning consumers, including but not limited to, consumer names, addresses, and bank and credit and debit card account information.

40.     In numerous instances during the initial telephonic sales pitch, Defendants' telemarketers tell consumers that the information that will be discussed will be held in strict confidence.  After enrolling in Defendants' program, Defendants send consumers a number of documents, including an agreement to provide loan modification assistance for a fee between the consumer and either the Law Offices of James Holderness or Silver Lining Services.  Among other things, the contract states:

**Privacy Policy:**  We do not disclose any non-public personal information to anyone, except as permitted by law, or with written customer consent.  We restrict access to your personal and accounting information to those employees who need to know that information to provide financial services and payment restructuring.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to

guard your non-public personal information.  We collect non-public personal information about you from information we receive from you on your application or other forms, information about your transactions with us, and information from a consumer-reporting agency.

41.     Defendants have engaged in a number of practices that, taken together, constitute failures to provide reasonable and appropriate security for sensitive consumer information.  In addition, Defendants have engaged in a number of practices that, taken together, constitute failures to take reasonable measures to protect consumer reports, or information derived from consumer reports, against unauthorized access or use in connection with their disposal.  Among other things, Defendants have failed to:  (1) implement and monitor policies and procedures requiring the information to be disposed of in a manner that ensures that the information cannot practicably be read or reconstructed; (2) adequately train employees to dispose securely of such information; and (3) oversee the collection and transport of the information for disposal, or otherwise confirm that the information is disposed of in a manner that ensures that the information cannot practicably be read or reconstructed.

42.     As a result of the failures set forth in paragraph 41, Defendants discard materials containing personal information in clear readable text (including consumers' names, addresses, bank account numbers, bank routing numbers, credit or debit card numbers, expiration dates, and security codes) in unsecured, publicly-accessible trash dumpsters.  Information discarded in publicly-accessible trash dumpsters could be misused to commit identity theft.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

43.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

44.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## Count I

45.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of services to renegotiate, settle, modify, or otherwise alter the terms of payment of secured and unsecured debts, including but not limited to mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that they generally will obtain for consumers a renegotiation, settlement, modification, or other alteration of the terms of such debts, including but not limited to mortgage loan modifications, that will make consumers' payments substantially more affordable.

46.     In truth and in fact, the material representation set forth in paragraph 45 is false or was not substantiated at the time the representation was made.

47.     Therefore, Defendants' representation as set forth in Paragraph 45 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S. C. § 45(a).

## Count II

48.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage assistance relief services, Defendants have represented, expressly or by implication, that as a result of the property valuation, forensic audit, and cost benefit analysis reports provided by Defendants, they generally will obtain for consumers

mortgage modifications that will make consumers' mortgage payments substantially more affordable.

49.     In truth and in fact, Defendants generally do not obtain for consumers mortgage modifications that will make consumers' mortgage payments substantially more affordable as a result of the property valuation, forensic audit, and cost benefit analysis reports provided by Defendants.

50.     Therefore, Defendants' representation as set forth in Paragraph 48 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S. C. § 45(a).

**Count III**

51.     In connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage assistance relief services, Defendants have represented, expressly or by implication, that Defendants are an agency of, or affiliated with, the United States government.

52.     In truth and fact, Defendants are not an agency of, or affiliated with, the United States government.

53.     Therefore, Defendants' representation as set forth in Paragraph 51 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S. C. § 45(a).

**Count IV**

54.     In connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage assistance relief services, Defendants have represented, expressly or by implication, that Defendants implement reasonable and appropriate measures to protect personal information against unauthorized access.

55.     In truth and in fact, Defendants do not implement reasonable and appropriate measures to protect personal information against unauthorized access.

56.     Therefore, Defendants' representation as set forth in Paragraph 54 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S. C. § 45(a).

### Count V

57.     In numerous instances, Defendants have discarded materials containing personal information in clear readable text (including consumers' names, addresses, bank account numbers, bank routing numbers, credit or debit card numbers, expiration dates, and security codes) in unsecured, publicly-accessible trash dumpsters.

58.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

59.     Therefore, Defendants' practices as described in Paragraph 57 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

### THE TELEMARKETING SALES RULE

60.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101 *et seq.*, in 1994. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain sections thereafter.

61.     The TSR exempts from coverage telephone calls initiated by a customer in response to a direct mail solicitation, unless the solicitation fails to clearly, conspicuously, and truthfully disclose all material information listed in Section 310.3(a)(1) of the TSR, including the

total costs to purchase, receive, or use the good or service that is the subject of the sales offer. 16 C.F.R. § 310.6(b)(6).  Nowhere in Defendants' solicitation letter is there any mention of the fees or total costs to purchase, receive, or use Defendants' mortgage assistance relief services.

62.     Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2(z), (bb), and (cc).

63.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

a.     Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.  16 C.F.R. § 310.3(a)(2)(iii); and

b.     A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.  16 C.F.R. § 310.3(a)(2)(vii).

64.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### Count VI

65.     In numerous instances, in the course of telemarketing services to renegotiate, settle, modify, or otherwise alter the terms of payment of secured and unsecured debts, including but not limited to mortgage assistance relief services, Defendants have misrepresented, directly or by implication, a material aspect of the performance, efficacy, nature, or central characteristic of such services, including that

a.      they generally will obtain for consumers a renegotiation, settlement, modification, or other alteration of the terms of such debts, including but not limited to mortgage loan modifications, that will make consumers' payments substantially more affordable; or

b.      as a result of the property valuation, forensic audit, and cost benefit analysis reports provided by Defendants, they generally will obtain for consumers mortgage modifications that will make consumers' mortgage payments substantially more affordable.

66.     Defendants' practice as alleged in Paragraph 65 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

### Count VII

67.     In numerous instances, in the course of telemarketing mortgage loan modification services, Defendants have misrepresented, directly or by implication, their affiliation with, or endorsement or sponsorship by, a person or government entity, including that Defendants are an agency of, or affiliated with, the United States government.

68.     Defendants' practice as alleged in Paragraph 67 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii).

### CONSUMER INJURY

69.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

70.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid,  and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

71.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act and the TSR including but not limited to,

rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated: November 15, 2010                    Respectfully submitted,

                                            WILLARD K. TOM
                                            General Counsel



                                            GREGORY A. ASHE
                                            ROBIN F. THURSTON
                                            Federal Trade Commission
                                            600 Pennsylvania Ave., N.W., Room NJ 3158
                                            Washington, D.C. 20580
                                            Telephone: 202-326-3719 (Ashe)
                                            Telephone: 202-326-2752 (Thurston)
                                            Facsimile: 202-326-3768
                                            Email: gashe@ftc.gov, rthurston@ftc.gov

                                            Attorneys for Plaintiff
                                            FEDERAL TRADE COMMISSION

# EXHIBIT A

**RRF**
Department of Financial Records

CONFIDENTIAL MATERIAL
P.O. BOX 7434
Baltimore, MD 21227

Time Sensitive Open Immediately



21227►0434



**WARNING**
$2,000.00 FINE AND/OR 5 YEARS IMPRISONMENT for anyone who tampers with or obstructs delivery of mail intended to addressee, or violated U.S. Code Title 18, Sec. 1702.

**INSTRUCTIONS TO POSTMASTER**
Do not forward unless the addressee has filed an authorizing change of address notice. If undeliverable, please handle in conformance with MAIL SECURITY regulations as outlined in section No. 115 of the United States Postal Service Domestic Mail Manual.

NIXIE    300    5E    1    78   08/11/10
         RETURN TO SENDER
         VACANT
         UNABLE TO FORWARD
BC: 21227043434        *2091-07512-11-45

# EXHIBIT B

# FORECLOSURE STIMULUS UPDATE

**Date: April 30, 2010**

**FINAL ENTITLEMENT NOTICE**
**Expiration Date:**

**May 30, 2010**

**Modification Case No. R043010-70977**
Your modification case has been assigned to
the following processing center:

**Residential Relief Foundation, LLC**
PO BOX 7434
Baltimore, MD 21227

**Modification Helpline: 1-877-254-7857**

Dear ████████,

Due to the current foreclosure crisis, the Federal Government has urged all mortgage banks and lenders to allow qualified borrowers to modify their mortgages. *Residential Relief Foundation* is currently assisting homeowners seeking relief on their delinquent mortgages through the *Loan Rewrite Initiative Program*.

Our records indicate that you are seriously delinquent on your mortgage. *Residential Relief Foundation* is authorized to provide you with a free consultation. This free consultation will determine if you qualify for a beneficial loan modification through the *Loan Rewrite Initiative Program*.

The *Loan Rewrite Initiative Program* may allow one or all of the following:

- Late payments waived
- Late fees waived
- Legal fees waived
- Adjustable rates converted to fixed rates as low as 1%
- Lower payment
- Principal balances reduced

This *Loan Rewrite Initiative Program* may reduce your mortgage payment by as much as 40%. For example, a $2,000 monthly payment may be reduced to as low as $1,200. At the same time, the *Loan Rewrite Initiative Program* may eliminate all delinquent payments and fees. All of these terms are adjusted on your present loan **without the cost of a refinance.**

Lenders and servicers are working frantically with homeowners to save their homes. Unfortunately, the lack of infrastructure and manpower has literally brought the majority of modifications to a stand still.

However, *Residential Relief Foundation* has employed a staff, which includes real estate attorneys, forensic auditors, and lender specific counselors who deal with the loss mitigation department of banks on a daily basis. Based on this expertise, *Residential Relief Foundation* has obtained a very high success rate for homeowners that meet the *Loan Rewrite Initiative Program* criteria.

Time is of the essence. Our attorneys and modification counselors are prepared to guide you step by step to assist you in saving your home and dramatically reduce your monthly mortgage payment. To initiate the process, call *Residential Relief Foundation's* toll free Modification Helpline at **1-877-254-7857** Monday through Friday from the hours of 9am-9pm (EST) and Saturday from 10am-4pm (EST) for your free consultation to see if you qualify for this program. When calling, please refer to your Modification Case No. located in the upper right hand corner of this notice.

Sincerely,

*Residential Relief Foundation, LLC*

